**Verone Marin FEHLHABER, Plaintiff-Appellant,**

v.

**Robert Fred FEHLHABER, as Personal Representative of the Estate of Fred R. Fehlhaber, Deceased, Joel L. Kirschbaum, as Successor of the Fred R. Fehlhaber Trust, Sun Bank/Miami N.A., Defendants-Appellees.**

No. 86–5512.

United States Court of Appeals, Eleventh Circuit.

Aug. 1, 1988.

---

Woodrow "Mac" Melvin, Jr., Ruden, Barnett, McClosky, Schuster & Russell, P.A., Steve I. Silverman, Miami, Fla., for plaintiff-appellant.

Herbert Stettin, Miami, Fla., for Kirschbaum.

A. Rodger Traynor, Jr., Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for Sun Bank, Miami.

Before RONEY, Chief Judge, FAY, Circuit Judge, and HENDERSON, Senior Circuit Judge.

RONEY, Chief Judge:

In this case, we hold that a judgment-creditor, through a Florida garnishment procedure, can reach the assets of a trust of which the judgment-debtor was both the settlor and the sole beneficiary, and in which capacities he retained complete control over the disposition of the assets of the trust. The trust contained no assets but those of the settlor. The district court reached a contrary decision on the ground that the judgment-debtor's interest in the trust was only contingent and that under Florida law, garnishment would not reach contingent interests of a judgment debtor. Under the facts of this case, there is no substantial difference between the debtor's interest in the assets of the trust and a person's interest in a brokerage account which holds securities for its customer. We, therefore, reverse the dissolution of the writs of garnishment and remand for further proceedings.

In February 1974, while married to Verone, Fred R. Fehlhaber set up an inter vivos trust. He named himself the income beneficiary for life, and his wife Verone, his son Robert, and his granddaughters as remaindermen. He included a spendthrift clause in the trust instrument. Fred retained the power to invade the trust principal, to modify its terms, and to manage the trust. He named his son as the trustee.

In May 1974, Verone sued Fred in California for legal separation. She obtained three state court judgments totaling in excess of $10,000,000. Fred obtained a divorce from Verone in Florida and thereafter married Muriel. Fred had amended the trust to eliminate Verone's interest and to replace it with one in favor of his new wife. On March 14, 1978, Fred had signed a Restatement of Trust Agreement which continued his powers over the trust, and which remained in effect at the time of his death on March 2, 1980.

Verone sued Fred in the Southern District of Florida seeking full faith and credit of the three California judgments. After appeal to this Court, Verone held a money judgment for $7,500,000. *Fehlhaber v. Fehlhaber*, 669 F.2d 990 (5th Cir. Unit B), *reh'g granted*, 681 F.2d 1015 (5th Cir. Unit B 1982), *reh'g denied*, 702 F.2d 81 (5th Cir. Unit B), *cert. denied*, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983).

Verone thereafter caused a writ of garnishment to be served upon Robert Fehlhaber, as trustee, and two writs of garnishment to be served on Sun Bank of Miami. They denied any indebtedness. The denials were traversed by Verone, and the matter pended on cross motions of the parties until the district court granted the garnishees' motions to dissolve the writs, which mooted

Verone's motions for summary judgment against the garnishees. Rehearing was denied and this appeal followed.

The district court held, relying on *Plymouth Cordage Co. v. Ward*, 202 So.2d 600 (Fla.Dist.Ct.App.1967), that writs of garnishment cannot reach contingent interests of a judgment-debtor. Here, however, the judgment-debtor's interest is fixed and not subject to any contingency, because under the terms of the trust the trustee had no discretion with respect to disbursements upon the judgment-debtor's demand. This, however, only begins the inquiry.

There seems to be little question but that this trust is valid under Florida law. A trust agreement is not rendered invalid merely because the settlor possesses the power to revoke, alter, or modify the trust in whole or in part, invade its principal, or has retained the right to receive all or part of the income of the trust during his lifetime. Fla.Stat.Ann. § 689.075. Although at one time suspect, *see, e.g., Croom v. Ocala Plumbing & Elec. Co.*, 62 Fla. 460, 57 So. 243 (1911), a spendthrift clause is valid today. *Waterbury v. Munn*, 159 Fla. 754, 32 So.2d 603 (1947).

That the trust may be valid for some purposes, however, does not insulate it from claims of creditors. Although Florida may not have clearly decided the question, there is abundant authority that with a proper approach, the assets of such a trust might be available to satisfy this judgment-creditor's claims. The general rule appears to be that "[i]t is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it...." *Nelson v. California Trust Co.*, 33 Cal.2d 501, 202 P.2d 1021, 1021 (1949).

As this Court stated, under the common law of trusts

> [i]f a settlor creates a trust for his own benefit and inserts a spendthrift clause, it [the spendthrift clause] is void as far as then existing or future creditors are concerned, as they can reach his interests under the trust.

*Matter of Witlin*, 640 F.2d 661, 663 (5th Cir. Unit B 1981) (citing Bogert, *Trusts &*

*Trustees*, 2d.ed. § 223, pp. 438–39). *Accord Matter of Goff*, 706 F.2d 574, 587 (5th Cir.1983); *American Security & Trust Co. v. Utley*, 382 F.2d 451, 452 (D.C.Cir.1967); *Liberty Nat'l Bank v. Hicks*, 173 F.2d 631, 634 (D.C.Cir.1948). *See generally* Scott, *The Law of Trusts*, § 156 (4th ed. 1987); Restatement, Second, Trusts § 156; Annotation, *Validity of Spendthrift Trusts*, 34 A.L.R.2d 1335 (1954). In other words, notwithstanding the validity of spendthrift trusts created by a settlor who is also the beneficiary of the trust, where the dominion is, as here, such that the beneficiary has the power to acquire all of the trust estate upon request, the interest should not be exempt from the claims of creditors. *See Croom v. Ocala Plumbing & Elec. Co.*, 62 Fla. 460, 57 So. 243 (1911); *see generally* 56 Fla.Jur.2d, *Trusts* § 36 (1985).

The garnishees do not here argue, however, that there is no procedure or no theory by which the judgment-creditor could get to these assets. Nor do they need to. The issue in this case is not whether there is some other procedure by which the judgment-creditor could reach the assets of the trust, but whether Florida garnishment proceedings are available for that purpose.

■ There are no Florida cases on point. Since the debtor was alive at the time the writs of garnishment were served, his subsequent death has no significance. The status of the debtor in relationship to the trust at the time the writs of garnishment were served would control. *See Lorthioir v. McLeod*, 102 Fla. 12, 135 So. 143, 143–44 (1931) (attachment); *Curle v. Jones*, 18 Ky. L.Rep. 785, 38 S.W. 677, 677 (Ky.Ct.App. 1897) (garnishment). *See generally* 13 Fla. Jur.2d, Creditors' Rights and Remedies § 169 (Death of principal defendant at any stage of proceedings after the levy of attachment will have no effect on its enforceability); Annotation, *Death of Principal Defendant as Abating or Dissolving Garnishment or Attachment*, 131 A.L.R. 1146, 1149 (1941).

■ We think that this interest can, under Florida law, be reached through a writ of garnishment. Aside from the fact that

Fehlhaber's right to change the trust under the powers retained by him is a legal right, even if his interest is viewed as beneficial, a writ of garnishment would be one way of reaching the trust assets. Florida recognizes that the beneficial interest in a spendthrift trust may, in some circumstances, be subject to secure payment of alimony through a writ of garnishment. *See, e.g., Southeast Bank, N.A. v. Gilbert,* 463 So.2d 223 (Fla.1985); *Bacardi v. White,* 463 So.2d 218 (Fla.1985). Florida's garnishment statute states in part:

> Every person who has sued to recover a debt or has recovered judgment in any court against any person, natural or corporate, has a right to a writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person.

Fla.Stat.Ann. § 77.01. A 1937 Fifth Circuit case upon which defendants primarily rely stated, in interpreting Florida's prior garnishment statute, that the equitable interest of a beneficiary of a voting trust consisting of corporate stock was not subject to a writ of garnishment, where the trustee had no property which he was required to turn over to the defendant and where the possibility of future dividends being collected by the defendant was characterized as a contingent liability, and thus not garnishable. *McLeod v. Cooper,* 88 F.2d 194 (5th Cir.1937). *McLeod* does not help the defendants in this case. *McLeod*'s holding was predicated on language that has since been removed from the present garnishment statute. In 1937, Florida's then existing garnishment statute did not subject corporate stock to a writ of garnishment. *Id.* at 196. In that situation, this Court held that *a fortiori,* the equitable interest of the bankrupt in a corporate voting trust of stock was not subject to the writ against the trustee. *Id.*

The statute today expressly subjects a debtor's "tangible or intangible personal property" to garnishment, and we think that language should be interpreted broadly enough to allow for a writ of garnish-

ment to be validly served during the life of the judgment-debtor against his equitable interest in this trust, one in which he has given up absolutely nothing and which, outside of the title given to it, is no different in substance from the legal interest one has in a bank account or a brokerage account bearing his name.

Other jurisdictions have allowed garnishment of a settlor's beneficial interest in a spendthrift trust created by himself for his own benefit. For example, in *Bank of Dallas v. Republic Nat'l Bank of Dallas,* 540 S.W.2d 499 (Tex.Civ.App.1976), while recognizing the validity of spendthrift trusts created by a settlor for others as being exempt from creditor's claims, the court stated:

> But the rule is otherwise in cases where the settlor creates a spendthrift trust, and makes himself the beneficiary thereof. And where a settlor creates a trust for his own benefit, and inserts a spendthrift clause, it is void as far as then existing or future creditors are concerned, and they can reach his interest under the trust by garnishment.

*Id.* at 501. *Accord Matter of Latham,* 823 F.2d 108, 111 (5th Cir.1987) (applying Texas law); *In re Goff,* 812 F.2d 931, 933 (5th Cir.1987) (applying Texas law). A similar rule prevails under South Dakota law, *Farmers State Bank v. Janish,* 410 N.W.2d 188, 190 (S.D.1987), as well as the law of Arizona. *See Arizona Bank v. Morris,* 6 Ariz.App. 566, 570, 435 P.2d 73, 77 (1967), *modified,* 7 Ariz.App. 107, 436 P.2d 499 (1968). Texas by statute allows a creditor of a settlor who is also a beneficiary of a spendthrift trust to satisfy claims against the settlor from his interest in the trust. *See* Tex.Prop.Code Ann. § 112.035(d). Many other jurisdictions have enacted other statutes in favor of creditors. *See generally* Scott, *The Law of Trusts,* §§ 152.1, 156 (4th ed. 1987). But the statutes are silent as to the *method* that may be used by the creditor to reach that interest. These cases reflect the view that garnishment is an appropriate one.

Accordingly, it was error for the district court to dissolve the writs of garnishment

by holding that garnishment cannot be used against the judgment-debtor's interest in this trust.

REVERSED and REMANDED.